IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GRADY JORDAN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 16-353-N |
| | ) |
| NANCY A. BERRYHILL[1], | ) |
| Social Security Commissioner | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) Plaintiff, Grady Jordan ("Jordan" or "Plaintiff") seeks judicial review of an adverse social security ruling denying claims for disability insurance benefits (DIB) (Docs. 1, 14). With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 23, 25). Oral argument was waived in this action (Doc. 22). After considering the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

PROCEDURAL BACKGROUND

Plaintiff protectively applied for disability insurance benefits on December 10, 2010. (TR. at 256-59). The application was initially denied on January 11,

---

[1] Nancy A. Berryhill has replaced Carolyn Colvin and is now the acting Social Security Commissioner.

1

2011, after which Plaintiff requested a hearing. (Doc. 14 at 1). A hearing was held before an ALJ on February 19, 2013, and the ALJ issued an unfavorable decision on April 8, 2013. (*Id*.) Plaintiff appealed the decision to the Appeals Council and on June 22, 2014, the case was remanded for further consideration, including the consideration of Dr. Dismukes' opinions. (TR. at 192-93, 92-96). A second hearing in front of an ALJ was held on December 18, 2014, and the ALJ rendered a second unfavorable decision on December 23, 2014. (*Id*. at 33-48, 66-74). Plaintiff again appealed the decision of the ALJ and the Appeals Council denied review on May 6, 2016. (*Id*. at 32, 374-377, 1-7).

At the time of the second administrative hearing, Plaintiff was fifty-two years old, had completed high school, and had previous work experience as a construction worker and welder. (Doc. 13; Fact Sheet). Plaintiff alleges disability due to post traumatic arthritis due to left calcaneal fracture, history of cervical fusion, and loss of pituitary gland function. (*Id*). An Administrative Law Judge ("ALJ") denied benefits after determining that Jordan did not meet disability listing requirements; the ALJ further found that Plaintiff was capable of performing a limited range of light work. (TR. at 39).

Plaintiff claims that the ALJ committed reversible error in rejecting the opinion of one of Plaintiff's treating physicians, Keith Dismukes, M.D. and "in doing so she performed an inadequate, cursory review of the evidence." (Doc. 14 at 1). Defendant has responded to—and denies—these claims. (Doc. 20).

## STANDARD OF REVIEW

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that

come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where, as here, the ALJ denied benefits and the Appeals Council denied review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. "[W]hen the [Appeals Council] has denied review, [the Court] will look only to the evidence actually

4

presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

DISCUSSION

Plaintiff asserts that the weight assigned to the opinions of Dr. Dismukes was in error based on the ALJ's incomplete and/or improper consideration of Dr. Dismukes' treatment records of Plaintiff. (Doc. 14 at 5). Defendant asserts the ALJ's assignment of weight was based on substantial evidence and was not in error. (Doc. 20, generally).

At step two of the sequential evaluation process the ALJ found that Plaintiff had a severe impairment of "post traumatic arthritis due to left calcaneal fracture and history of cervical fusion." (TR. at 38). At step three, the ALJ found that Plaintiff did not have "an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairment of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR Part 404.1520(d), 404.1525 and 404.1526)." (*Id*. at 39). The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform light work "except that he required a sit-stand option allowing him to alternate sitting or standing position at 60 minute intervals throughout the day, no operation of foot controls with the left lower extremity, never climb ladders, ropes, or scaffolds and no exposure to excessive vibration, unprotected heights, and hazardous machinery". (*Id*. at 39). As a result, the ALJ concluded that Plaintiff was not disabled. (*Id*. at 43).

After summarizing the Plaintiff's initial hearing testimony, acknowledging

Plaintiff's continued hormone replacement therapy by Dr. Dismukes, and summarizing a consultative exam of November 21, 2011, by a consultative examiner, Dr. Roubidoux, the ALJ stated that the RFC was consistent with the medical record as a whole. (*Id.* at 41). The ALJ then stated that he gave only little weight to Dr. Dismukes' opinions. (*Id.* at 41). Plaintiff, however, asserts that the weight assigned to the Medical Source Statement and Clinical Assessment of Pain forms dated March 1, 2013 completed by Dr. Dismukes (TR. at 471-72), was in error because the ALJ's review of the medical evidence was "cursory and incomplete." (Doc. 14 at 5). The Medical Source Statement and Clinical Assessment of Pain forms are described by Plaintiff as follows:

> [Dr. Dismukes] stated Mr. Jordan could sit one hour and stand or walk less than one hour in an eight-hour workday. He could occasionally lift and/or carry up to ten pounds, or five pounds frequently. He required a splint for his left foot. He could only occasionally perform gross or fine manipulation or operate motor vehicles. He could never perform pushing and pulling movements of arm and/or leg controls, climb stairs or ladders, balance, bend, stoop, reach overhead, or work with or around hazardous machinery. He stated these limitations were normal for Mr. Jordan's condition, and his diagnoses were confirmed by objective findings. He explicitly stated these limitations had been present since before March 31, 2010. (Tr. 471).
>
> Dr. Dismukes also completed a Clinical Assessment of Pain form. He stated Mr. Jordan's pain was present to such an extent as to be distracting to adequate performance of daily activities. Significant side effects may be expected which may limit effectiveness of work duties or performance of everyday tasks. Physical activity such as walking, standing, bending, stooping, waving of extremities, etc., would increase his pain to such an extent that bed rest and/or medication is necessary. He concluded Mr. Jordan's condition could reasonably cause this level of pain. He stated Mr. Jordan's pain prevented him from maintaining attention, concentration or pace for periods of at least two hours. He stated Mr. Jordan's pain had persisted at this level since before March 31, 2010. (Tr. 472)

6

(*Id.* at 3-4). Defendant points out that the above opinions are on "single-page, check-the-box style forms". (Doc. 20 at 5).

"In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. Sept. 30, 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). The Court notes that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[2] *see also 20 C.F.R. § 404.1527*. Regardless, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam).

---

[2]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

7

In the ALJ's opinion, the weight given to Dr. Dismukes' opinion was diminished because it was not consistent with the medical evidence of record. (TR. at 41). More specifically, with regard to Dismukes' opinion, the ALJ stated:

> Pursuant to the remand order I have considered and given little weight to the opinion Dr. Dismukes in Exhibit 15F. During the relevant time period, Dr. Dismukes treated the claimant primarily for hormone supplements. The only treatment for a specific complaint was in May, 2007, when the claimant sought treatment for allergic rhinitis (Exhibit 1F). There is no evidence that the claimant was receiving any pain medication and, thus, the pain questionnaire is not supported by the record. His medical source statement is not supported by the objective evidence, the subjective complaints during the time period, or the treatment records.

(*Id.*) Plaintiff points to several factual discrepancies to show that the ALJ did not fully review the records of Dr. Dismukes, resulting in an improper assignment of weight to Dr. Dismukes' opinions. Specifically, Plaintiff points out (1) that the record from May 2007, was not Plaintiff's *only* visit to Dr. Dismukes for a specific complaint because he also visited with a specific complaint on July 2007, which resulted in Dr. Dismukes prescribing Celebrex for arthritis after Plaintiff complained of an inability to turn his neck and due to his left foot feeling "frozen", (2) the ALJ's failure to acknowledge a podiatry visit from 2003, that revealed severe pain in Plaintiff's left heel and resulted in a change of orthotics, (3) the ALJ's failure to note Plaintiff's prescription for pain medications of Celebrex, Cortef, and Advil/Tylenol during the relevant time period, and (4) the ALJ's failure to consider Plaintiff's subjective testimony relating to his activities of daily living. (Doc. 14 at 4-7). For the reasons set forth below, the undersigned does not find Plaintiff's arguments to be compelling.

8

Despite the one additional visit to Dr. Dismukes in 2007, there is still substantial evidence that Dr. Dismukes treated Plaintiff "primarily for hormone supplements." (TR. at 379-394, 448-56, 470). The fact that the ALJ did not cite to a second visit, as Plaintiff points out, is not evidence that the ALJ failed to evaluate Dr. Dismukes' records or that his assessment of Dr. Dismukes' relationship with Plaintiff, a valid factor in determining weight assigned, was inaccurate. *See* 20 C.F.R. §§ 404.1527(c). Second, contrary to Plaintiff's assertion, the ALJ specifically acknowledged the 2003 podiatry record Plaintiff contends was omitted from the ALJ's review. (*Id*. at 39). In that regard, the ALJ stated as follows:

> Otherwise, he did receive treatment in 2003, for complaints of "off an one" [sic] help pain attributed to rear foot valgus, calcaneal spur, plantar rasciitis, and post traumatic arthritis. (Exhibit 12F). On examination, he did present with severe pain to palpation of the plantar-medial left heel, antalgic gait, everted calcaneous left, and rigidly everted left hind-foot with no subtalar range of motion. (Exhibit 12F). However, he also had normal sensations, normal deep tendon reflexes, 5/5 muscle strength for all groups tested, and normal muscle tone. (Exhibit 12F) Treatment at this time remained conservative as well and claimant was prescribed orthotics.

(*Id*.) As a result, it is clear that Plaintiff's contention that the ALJ failed to consider Plaintiff's 2003 podiatry visit in assigning weight to Dr. Dismukes' opinion, is without merit.

Plaintiff next claims that the ALJ failed to consider Plaintiff's prescribed pain medications including, Cortef, Celebrex, and Tylenol/Advil as needed. However, in summarizing the medical record, the ALJ stated "[a]gain, other than for hormone replacement therapy, the claimant has had no ongoing treatment for significant complaints. He has had no treatment for chronic pain and is on no

9

prescribed pain medication." (*Id*. at 40). Plaintiff points out that he was prescribed Celebrex in July 2007. However, the medical record indicates that Plaintiff was prescribed Celebrex for pain *only once*, with no refills. (*Id*. at 39; TR. at 380). Further, Plaintiff seems to assert that Plaintiff's prescription for Cortef was treatment for ongoing pain; however, the medical record (and Plaintiff's brief) reflect that the same was treatment for Plaintiff's pituitary gland. (*See* Doc. 14 at 2 ("On March 4, 1986, after hospitalization and extensive pituitary testing, it was determined Mr. Jordan's pituitary gland still was not functioning properly. He would require Synthroid, Cortef and testosterone injections. (Tr. 435-436)."). While Plaintiff points out that Cortef can be used for pain, he points to nowhere in the medical record to substantiate that *Plaintiff* was taking it for pain. Further, while Plaintiff was taking Tylenol and Advil as needed, the same does not discredit the ALJ's determination that Plaintiff was not taking *prescription* pain medication. Lastly, Dr. Robidoux, the consultative examiner, after reviewing Plaintiff's medical records, stated "no chronic pain care found. On no pain medications." (TR. at 412). As a result, the ALJ's conclusion that Plaintiff was not taking ongoing pain medications is supported by substantial evidence and was not improper.

Plaintiff's last point of contention is that the ALJ failed to consider Plaintiff's subjective testimony as to his physical capabilities. (Doc. 14 at 5-6). However, the ALJ articulated that Plaintiff's testimony was not fully credible. Specifically, the ALJ noted, "the record also documents no complaints of significant side effects to the injections, thus his testimony of adverse medication side effects are not

supported and are not credible" […] "in the consultative report the claimant described activities contradictory to his purported level of limitations. He stated ' I cut grass and cook and shop' and he continued to drive as well (Exhibit 4F, p.13). However, the claimant testified he performs no household chores." (TR. at 40, 41). Plaintiff additionally asserts that the ALJ adopted the consultative examiner's attitude towards Plaintiff resulting from Plaintiff's refusal to test his left foot. There is, however, no evidence that the ALJ's consideration of this factor was a basis for the weight assigned to Dr. Dismukes' opinions.

Despite, Plaintiff's assertions to the contrary, this Court finds that there was substantial evidence that contradicted Dismukes' opinions such that the ALJ did not err by giving his opinion little weight. Further, the ALJ's explanation specifically articulates the reasoning behind his decision to diminish the weight attributed to Dr. Dismukes' opinion, i.e. because of the limitations of his treatment of Plaintiff, because of lack of record on ongoing pain medication for chronic pain, and a lack of support by the objective medical record, the subjective complaints, or the treatment records. (TR. at 41). As such, Plaintiff's assertion that Dr. Dismukes' opinion should have been assigned more weight is without merit.

## CONCLUSION

Plaintiff has raised one claim in bringing this action and it is without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Therefore, it is **ORDERED** that the Secretary's

decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMMISSED**. Judgment will be entered by separate Order.

DONE this 9th day of May 2017.

> */s/ Katherine P. Nelson*
> **KATHERINE P. NELSON**
> **UNITED STATES MAGISTRATE JUDGE**